In re VULCAN FOUNDRY & MACHINE CO.

Appeal of STRASBURGER et al.

(Circuit Court of Appeals, Third Circuit. June 18, 1910.)

No. 1,321

1. BANKRUPTCY (§ 474*)—EXPENSES OF ADMINISTRATION—CARE OF MORTGAGED PROPERTY.

Expense incurred by a trustee in bankruptcy in caring for real estate which is subject to valid mortgages is presumed to be for the protection of the supposed interest of general creditors, and unless the mortgagees

expressly or by necessary implication assent to such expenditures they cannot, in general,. be charged with them.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 474.*]

2. BANKRUPTCY (§ 474*)—EXPENSES OF ADMINISTRATION—LIABILITY OF MORT-·GAGEES.

The real estate of a bankrupt corporation was subject to two valid mortgages. By an order of the referee it was directed to be sold subject to the first mortgage, and a further order provided that, in case it was purchased by the second mortgagee, the latter should pay $500 in cash, to be subject to the further orders of the court as to expenses and charges, and might use its mortgage as a credit on the remainder of the purchase price. Under such orders it purchased the property and paid in the $500. *Held*, that it should not in equity be subjected to the payment ·of a further large sum to cover expenditures previously made by the trustee in employing a watchman for the property and for insurance, and interest paid on the first mortgage, all of which expenses were incurred without its consent.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 474.*]

Appeal from the District Court of the United States for the Western District of Pennsylvania.

In the matter of the Vulcan Foundry & Machine Company, bankrupt. From an order of the District Court, S. B. Strasburger and others appeal. Reversed.

Thomas Patterson, for appellants.

J. Norman Martin, for appellee.

Before LANNING, Circuit Judge, and BRADFORD and McPHERSON, District Judges.

J. B. McPHERSON, District Judge. The Vulcan Foundry & Machine Company was adjudged bankrupt in April, 1907, and in the following June a trustee was elected, who took possession of the real and personal property belonging to the estate. A large part of the personalty had already been sold by a receiver appointed by the Circuit Court, and about $4,000 derived from such sale was paid to the trustee by the receiver. Afterwards the trustee realized about $700 more from his own sale of other articles. This sum of $4,700 was, and is, available for the payment of whatever costs and expenses incident to the administration of the estate should be charged against it. The real estate consisted of a manufacturing plant in the city of Newcastle, Lawrence county, Pa. When the adjudication was entered there were several liens against the realty, but only two need special notice. These were both mortgages—the first, for $50,000, bearing interest at 5.4 per cent., which was held by a trustee for the bondholders, and the second, for $30,000, held and owned by the appellants as collateral security for indorsements. This amount was afterwards reduced to $18,000, with interest from March 16, 1907, and the two liens may therefore be taken as representing $68,000 at the time the company became a bankrupt. For the respective sums named these two mortgages were valid liens, and by the express provision of section 67, cl. "d," of the bankruptcy act,† such liens are not to be affected by proceedings under the statute. Lienholders are therefore the vir-

---

*For other cases·see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† U. S. Comp. St. 1901, p. 3450.

tual owners of the property pro tanto, and (as a general proposition) this substantial ownership is not to be disturbed without their consent. The Pennsylvania cases also regard the holders of liens as owners of a real, although an equitable, interest in the property, and their rights in that character are carefully guarded. Bausman's Appeal, 90 Pa. 178; Burkholder's Appeal, 94 Pa. 522; Wolf's Appeal, 106 Pa. 545 (where lien creditors of an assignor are spoken of as "substantial owners of his real estate").

It is no doubt true that the federal tribunals support the power of the District Court to sell a bankrupt's real estate discharged of liens—and to that extent the position of a lien is undoubtedly affected—but care is always taken to protect the liens by transferring them to the fund produced by the sale, and their virtual ownership of the property is thus effectively admitted. It is also true that in some cases certain expenses have been charged against lienholders, for example, the expense of selling the incumbered property, and such a charge may no doubt be warranted under some conditions. It would certainly be warranted if the lienholders came into the District Court (as they did in several reported cases) and asked that the sale might be made by that tribunal, for otherwise they would themselves be put to a similar expense in proceeding upon their liens in another forum. But where it is sought to charge a lienholder with the cost of preserving and administering the incumbered property, as distinguished from the cost of its sale, it becomes necessary to consider the particular situation with great care, paying due regard to the rights of those who are in equity part owners of the property, for they cannot be deprived of their valuable interest except in strict accordance with legal or equitable rules. Especially is this true when a lienholder stands upon his lawful rights, and does not assent, expressly or by necessary implication, to the acts for which he is afterwards asked to pay. To make such charges a prior lien upon the fund produced by a sale in effect compels an owner to pay for what he has never ordered—may, indeed, have strenuously opposed—and, under the guise of protecting his interests, may perhaps impair them seriously.

Bankruptcy proceedings take place in a court of equity, and it should always be remembered that holders of valid liens have a statutory right to preferred treatment. If the receiver or trustee has a reasonable belief that the property is worth substantially more than the liens, it may no doubt be his duty to preserve this equity for the general creditors. But—speaking generally—since such steps as may be taken for this purpose are in the interest of these creditors, the cost should be paid by them and not by the lienholders, whose debts, indeed, are often perfectly secure, and receive no benefit from such effort as may be made to turn the equity into cash. We do not attempt to lay down a general rule to cover all cases. This would obviously be impracticable, but we think it is safe to say that the holders of liens are ordinarily entitled to judge for themselves what their interests may require, and that these interests cannot be affected without their consent in the effort to benefit persons whose rights are inferior to their own. We agree with the appellants' counsel that there is a plain analogy between

180 F.—43

a situation like this and the cases in which it has been held that mortgage creditors of a private corporation should not have their security displaced by receiver's certificates, unless, perhaps, under extraordinary circumstances. Farmers' Loan & Trust Co. v. Coal Co. (C. C.) 50 Fed. 481, 16 L. R. A. 603; Newton v. Eagle Co. (C. C.) 76 Fed. 418; Doe v. Coal, etc., Co. (C. C.) 78 Fed. 73.

Let us apply these general principles to the particular, and in one respect the unusual, facts of the case in hand. Apparently acting upon a belief, which may have been fully justified, that the general creditors might realize something from the equity in the bankrupt's real estate, certain expenses were incurred by the trustee in administering the property. But the effort was not successful, and the principal question to be decided is how far the lienholder who is chiefly affected may be charged with the cost of the experiment. An order of sale was made by the referee, which preserved the lien of the first mortgage, but discharged the liens of the other incumbrances, transferring all divested rights to the proceeds of sale. But before the property was offered the referee made a further order that, if the second mortgagees should become the purchasers, they should pay only $500 in cash, and should then be "allowed to use their mortgage to the extent of $17,500 to apply on the purchase price." And it was further ordered:

"That the $500 cash payment as aforesaid be held by the trustee subject to the payment of any expenses or commissions that it may hereafter be determined are a proper charge against the mortgage."

But before this order was made the second mortgagees had protested against any sale at which they could not use the mortgage in discharge of their bid, and denied the power of the court to charge any part of the costs or expenses of sale or of the trustee's commissions, so as to reduce in any way the amount of the mortgage. And they appeared before the referee only for the purpose of protesting, declaring that neither the protest nor their appearance "(should) be construed as submitting the question of our rights as lien creditors to the jurisdiction of the referee for determination." Upon the terms referred to a sale was made in March, 1908, to the second mortgagees, who complied with the order and paid $500 in cash to the trustee. Afterwards, however, a demand was made that they should be charged with the whole expense of preserving and administering the property, and, without going into the details of the subsequent procedure it is enough to add that in the end the court ordered them to pay an additional sum of $4,454.11, mainly upon this account. From this decree the present appeal is taken, and in our opinion the principal objections must be sustained.

It is unnecessary to decide whether in any event the cost of preserving and administering the estate could be charged against the appellants, who, so far as appears, did not agree, expressly or by necessary implication, that these expenses should be incurred. We need only say that no such charge can be made in fairness under the facts in proof. The appellants accepted and acted upon the referee's order requiring them to pay $500 of their bid in cash, and permitting them to use their mortgage as a credit upon the remainder of the purchase

money, and we think they acquired a right thereby of which they should not in equity and good conscience be afterwards deprived against their will. The property was bought under distinct and positive terms, which contained no reference to the possibility of such charges as were afterwards made, and we think the District Court should not in effect have substituted other terms for those which had thus been offered and accepted. Here was the order of a competent tribunal—the referee—unmodified and unappealed from, under which the second mortgagees acted in good faith, thereby waiving whatever right they may have had to object to it in toto. Relying upon the order, they bought the property; and, when they ask that the terms in their favor be carried out as well as the terms that affect them adversely, they are met with the statement that a further modification is now to be made. We do not assert that any contract existed between the court and the second mortgagees, but we are clearly of opinion that under the circumstances referred to the decree appealed from should not have been made.

The referee and the court seem to have been misled by supposing that the trustee was acting in the interest of the lienholders when he employed a watchman, paid for insurance, and incurred similar expenses. But he had no authority from the lienholders to spend any money on their behalf, and it is abundantly evident that he was solely considering the contingent interest of the general creditors, and was hoping to realize something for them. The experiment was to be for their benefit, and it is only just that they should pay for it. No doubt much of the money paid out by the trustee was of advantage to both mortgagees, but we do not see upon what ground these virtual owners can properly be asked to pay for what they did not authorize expressly or by necessary implication. No doubt they would have been obliged to protect the property at their own expense if it had been abandoned by the trustee, but this situation did not arise and need not be considered. Moreover, it may be remarked in passing that the expenditure benefited both mortgagees, while only one is now being asked to repay the whole amount. The second mortgagees are also charged with the commissions of the referee and the trustee upon the total amount of their bid, as if it had all been paid in cash, and under the facts of this case these fees must be disallowed.

There are two items that may need a few further words. Part of the charge against the appellants consists of city and county taxes for 1907 and 1908 upon this plant. They have not been paid by the trustee, and we are at a loss to understand upon what theory the charge can be sustained. If it be contended that by virtue of the Pennsylvania statutes these taxes continue to be liens upon the real estate in spite of the sale under the referee's order, obviously the existence and validity of the liens cannot be determined in this proceeding. If they are still liens, they have no claim upon the fund which the District Court is distributing, but must be questioned or enforced by some other proceeding, perhaps in a state tribunal. But, if the liens were discharged by the sale, and were thereby transferred to the fund, it is the fund to which the taxing authorities must in the first instance look for

satisfaction. The appellants have contributed $500 to the proceeds of the real estate, and in our opinion they were not bound to contribute any further sum. Whether this is to be applied to the specific purpose of paying the taxes in question will be for the District Court to decide in entering a corrected decree.

The remaining item is the interest upon the first mortgage. When the trustee took possession, the interest upon the mortgage had been paid to June 1, 1907. He afterwards obtained leave from the referee to pay the interest falling due upon December 1st of the same year, and this was paid out of the funds in his hands derived from the sale of the personalty. Why it was thought necessary to make this payment does not clearly appear; but no doubt it was believed to be a judicious act, or it would not have been done. The effect of it was to relieve the subsequent purchaser to that extent; for, as the sale was subject to the first mortgage, it was subject also to the arrears of interest, and the price paid by the purchaser may have been influenced by the fact that this semiannual installment had been paid. But the difficulty is that the payment of the interest was part of the same experiment that the trustee was making on behalf of the general creditors. When he asked for permission to pay the December interest, he put it expressly on the ground:

"* * * That it is for the best interest of the estate and the creditors thereof that the said interest be paid and the mortgage be kept valid and extended, and that the trustee therein, the Lawrence Savings & Trust Company, shall not have the right to take advantage of the forfeiture clause in the said mortgage and foreclose the same, to the detriment of the creditors and stockholders of the said company."

He was not thinking of the mortgagees, but of what was probably best for the general creditors and stockholders. If the payment was injudicious, it cannot now be remedied. As it seems to us, there is nothing to be said about it, except that the expectations of the trustee and the general creditors have been disappointed. But this gives them no right to be reimbursed for what has turned out to be a superfluous outlay.

The decree is therefore reversed, with costs, and the court below is directed to distribute the fund in accordance with this opinion.

BRADFORD, District Judge. While I do not dissent from the the conclusion that the decree below must be reversed I do not concur in the reasoning adopted by the court, nor do I assent to the view that there were not some items of expense properly chargeable against the purchase price of the real estate bought by the appellants. The theory that appellants by accepting and acting upon the referee's order requiring a payment of $500 of their bid in cash, and permitting them to use their mortgage as a credit upon the remainder of the purchase money, acquired a right of which they could not in equity or good conscience be afterwards deprived against their will, I consider utterly unsound. Although not so expressed in terms it is practically the assertion of the doctrine that the court below became contractually bound to the appellants, or was estopped in their favor, with respect to the collection of the actual and necessary cost of preserving the

mortgaged real estate subsequent to the filing of the petition in bankruptcy, and other items of expense properly chargeable against the real estate and transferred to its proceeds upon its sale. This doctrine, in my judgment, is not only unsound but dangerous. Nor is there any principle of equity which can justify its assertion in this case; for the court below, it must be assumed, would have set aside the sale upon the ground of mistake or surprise on the application of the appellants. They, however, did not see fit to make such application. I think that entirely too much weight has been given to the idea that a mortgagee is to be treated as the owner of the mortgaged property. If some person other than the appellants had bought the property in question and the purchase money had been paid into court all proper charges and expenses would undoubtedly have been paid out of the proceeds of sale, and I can perceive no reason why the same result should not obtain here with possibly the exception of the costs of sale. But the decree of the court below appealed from was erroneous in requiring the payment by the appellants of a sum of money covering and including certain items which, in whole or in part, should not properly fall upon the appellants, and therefore should be reversed, with a proper direction by this court as to what items should be allowed as against the appellants out of the purchase price.