In re FREEMAN et al.

(District Court, S. D. Georgia, Albany Division. May 13. 1911.)

BANKRUPTCY (§ 482*)—INVOLUNTARY PROCEEDINGS—MORTGAGED PROPERTY.

Where involuntary bankruptcy proceedings were only nominal, the bankrupt having answered, and, an adjudication having been rendered the next day after the petition was filed without notice to creditors, mortgaged property of the bankrupt was not liable to contribute to the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date; & Rep'r Indexes

payment of fees of attorneys for petitioning creditors; the mortgagee not having participated nor appeared, except to claim the entire fund under priority of his mortgage.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 482.*]

In the matter of bankruptcy proceedings of S. A. & W. T. Freeman. Intervention of Atlanta Woodenware Company, mortgagee. On petition to review a referee's order directing that fees of attorneys for petitioning creditors be paid out of the fund in court arising from the sale of mortgaged property. Order modified.

S. A. & W. T. Freeman were engaged in the furniture business in Albany, Ga. They gave a mortgage to the Atlanta Woodenware Company, which was duly filed and recorded more than two years prior to the bankruptcy proceedings. There was no question as to the validity or bona fides of the mortgage. At the time of bankruptcy the amount due under the mortgage, in round figures, amounted to $5,000. L. W. Nelson, representing claims aggregating in amount only $271, filed a petition against S. A. & W. T. Freeman, and praying that they be adjudicated bankrupts. The next day an answer was filed, admitting bankruptcy, and asking that they be adjudicated bankrupts. Upon this petition and answer the referee passed an order of adjudication. In due course the stock of goods was sold by the trustee for the sum of $1,325. The mortgagee asked that this amount be paid over to it under its mortgage. The referee ordered that there first be paid out of the fund the sum of $355, for certain taxes due upon the property, for the actual costs of the receiver and trustee in preserving and selling the property, for the receiver's, trustee's, and referee's commissions; and that there also be paid out of the fund the filing fees and general costs of administration, amounting to $143.50, and the fees of attorneys for petitioning creditors, and for the bankrupt, as soon as the same should be fixed by the court; and that the balance of the fund then be paid over to the mortgagee. The mortgagee filed no exceptions to the payment of the taxes and the court costs, amounting to $355, for the items above stated, but excepts only to that portion of the order directing that attorney's fees and general costs of administration be paid out of the fund.

I. J. Hofmayer, for Atlanta Woodenware Co.
L. W. Nelson, for petitioning creditors.

SPEER, District Judge (after stating the facts as above). I have no doubt about this question. It seems very clear that, while this was nominally an involuntary proceeding, the prompt action of the alleged bankrupts made it a voluntary proceeding. It looks very much as if there was some, I will not say collusion, but understanding, between the petitioning creditors who filed the bill and the bankrupts. The bill was filed on one day, nominally as an involuntary proceeding, and the bankrupts came in the next day, and the referee, without notice to other creditors, proceeded to adjudicate them bankrupt. That action of the referee, together with the action of the petitioning creditors and the bankrupts, destroyed entirely the involuntary character of the proceedings. Other creditors had the right to be heard. The only effect of involuntary bankruptcy like that by consent would be to saddle the assets with expenses of counsel fees and the like. It is true that the referee went forward and appointed a receiver, and incurred certain expenses in the administration of the estate which probably ought to be

paid whether the proceeding was voluntary or involuntary. But the mortgagee, who had a valid lien, existing two or three years before the bankruptcy proceeding, when his security was not increased in any manner by the action of counsel for the petitioning creditors, and when it was jeopardized by that action, ought not, in the opinion of the court, to be obliged to contribute to the expenses of counsel for petitioning creditors. It is wholly unlike the case of Alison Lumber Company (D. C.) 137 Fed. 643, where the mortgage creditors appeared in the bankruptcy court, selected it as their forum, availed themselves of the services of its officers, and utilized its process to collect their claims. There the court held that the mortgaged property should contribute to the payment of attorney's fees which might be fixed under the statute.

It is also wholly unlike the case of Erie Lumber Company (D. C.) 150 Fed. 817. There the business was a continuing business, and the court held:

"A mortgagee of a bankrupt, who has notice of and participates in the bankruptcy proceedings, and makes no objection to the appointment of receivers to continue the bankrupt's business, but does a banking business with the receivers, is thereby precluded from insisting on the priority of his mortgage over the operating expenses or other obligations incurred by the receivers under orders of the court in carrying on the business which was intended to conserve his security."

That is not this case. The lienholder did not participate. He objected all the time, and if he appeared at all he appeared for the purpose of objecting. His claim, as I understand, was never proven in bankruptcy, except to claim the entire fund. I think the cases are clearly distinguishable. Indeed, Mr. Remington, in his work on Bankruptcy (volume 2, p. 1234, par. 1994, and in the notes thereto), draws the distinction here made by the court, and distinguishes the cases of Alison and of the Erie Lumber Company, heretofore decided by this court, from the general rule therein announced; that is, that the general costs of administration, including attorney's fees, cannot be taxed against the mortgaged property.

Take an order modifying the finding of the referee in accordance with the ruling of the court.