## In re NEW YORK & PHILADELPHIA PACKAGE CO.

(District Court, D. New Jersey. August 3, 1915.)

1. BANKRUPTCY ⇐342½—ORDERS OF REFEREE—PETITION TO REVIEW.

A finding of the referee, based on conflicting evidence, involving questions of credibility, will not be disturbed, unless there is most cogent evidence of mistake and miscarriage of justice; but the rule is otherwise when the finding is a deduction from established facts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 530; Dec. Dig. ⇐342½.]

2. BANKRUPTCY ⇐268—SALE OF PROPERTY—TAXES.

An order, directing the property of a bankrupt to be sold, provided for its sale free and clear of all outstanding liens or incumbrances. The prop-

---

erty was subject to taxes. The trustee in bankruptcy paid the taxes out of moneys which he required the purchaser to advance. The order further provided that the consent by the mortgage trustee to the payment of taxes out of such funds should not preclude the mortgage trustee, who bought in the property, in the event of further assets being discovered, from presenting a petition to the court asking for repayment of the moneys authorized to be paid for taxes. *Held* that, in view of the trustee's acts, and the order of sale, he could not thereafter claim that the property was sold subject to taxes.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 372–379; Dec. Dig. ☞268.]

3. BANKRUPTCY ☞267—SALE OF BANKRUPT'S PROPERTY—CHARGES.

In bankruptcy, where property upon which there was a valid lien was sold by the trustee free and discharged from the lien, without the consent of the lienholder, and it produced only substantially enough to pay the amount of the lien, only those fees, costs, and expenses of administration which were necessary for the preservation of the property for the lienholder, and which the lienholder would necessarily have expended in foreclosing his lien, may be charged against the fund realized.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 371, 380; Dec. Dig. ☞267.]

In Bankruptcy. In the matter of the bankruptcy of the New York & Philadelphia Package Company. On petition to review two orders of the referee. Order reversed, and matter remanded, with directions.

John F. Gorman and William Gorman, both of Philadelphia, Pa., for mortgage trustee.

Joseph H. Gaskill, of Camden, N. J., for trustee in bankruptcy.

David O. Watkins, of Woodbury, N. J., pro se.

HAIGHT, District Judge. The petitions for review in this matter are prosecuted by a substituted trustee under a mortgage given by the bankrupt company to secure an issue of bonds. All of the mortgaged property was taken possession of and sold by the trustee in bankruptcy, over the objection of the mortgage trustee, free and discharged of the mortgage; the order for sale being based upon the assumption that there was a substantial equity in the property, over and above the amount due on the bonds. The validity of the mortgage was not questioned. The property was purchased by the mortgage trustee, for the benefit of the bondholders.

After the sale was confirmed, the purchaser was permitted by the referee, in lieu of paying the whole amount of the purchase price in cash, as the conditions of sale required, to deliver to the trustee in bankruptcy the bonds secured by the mortgage; but he was required to deposit $7,500 in cash. This is one of the orders which it is sought to have reversed. He contends that he should not have been required to advance in cash any more than was sufficient to pay the prior liens on the property and certain expenses of sale, the total of which would have been much less than $7,500. The question thus presented, however, is, in this case, of little, if any, practical importance.

After the sale was consummated, the trustee filed an account of all of his receipts and disbursements in the bankruptcy proceeding to

date, and also a petition wherein he prayed that certain allowances be made, and that he be authorized to pay them, as well as make some other disbursements, out of the proceeds of the sale. The account was allowed; and, by separate order, certain of the allowances were made, and the trustee was directed to pay them, and to make certain of the disbursements mentioned in his petition. This is the other order which is complained of. The only moneys which have as yet come into the hands of the trustee in bankruptcy are a small amount collected on a claim, that borrowed on a certificate issued by him, and the purchase price of the mortgaged property. The two first-mentioned sums have already been more than exhausted in payment of insurance premiums, services of watchmen, and other incidental administration expenses. The trustee under the mortgage contends that, therefore, the additional allowances and authorized disbursements must all be paid from the proceeds of the sale of the mortgaged property, and in that way he will be required to bear expenses which are not legally chargeable against him as a lienholder.

[1, 2] When the matter was first presented to the court, it appeared that, if the property had been sold subject to taxes, the amount realized, over and above the amount admittedly due for principal and interest on the bonds and the amount due on the trustee's certificate, would be substantially enough to pay the allowances and authorized disbursements complained of, and hence the lienholder would have no standing to question the referee's later order. Counsel being unable to agree as to whether the sale was subject to taxes, and the referee having failed to make any mention thereof in his certificate, the matter was remanded to him to report on that question. The referee thereupon heard testimony, and has filed a certificate in which he certifies that the property was sold subject to taxes. The trustee under the mortgage challenges this finding. It is necessary, therefore, to determine primarily whether the referee's conclusion in this respect is correct. It would appear from his certificate that it is based entirely upon the testimony which was taken after the matter was remanded to him. This testimony was conflicting, involving the credibility of witnesses whom the referee heard, and, if it were the only evidence on this question, I should not disturb his finding, because it is the rule in this district, and elsewhere, I think, that the court will not disturb the findings of fact of a referee, based upon conflicting evidence, involving questions of credibility, unless there is most cogent evidence of mistake and miscarriage of justice. In re Partridge Lumber Co. (D. C., N. J.) 215 Fed. 973, 976; In re Utica Pipe Foundry Company (D. C., N. Y.) 221 Fed. 787, 790, where the general rule is stated and the authorities collected.

But it is also a general rule that, if the finding be a deduction from established facts, it will not carry any great weight, for the court, having the same facts, may as well draw inferences or deduce conclusions as the referee. Baumhauer v. Austin, 186 Fed. 260, 108 C. C. A. 306 (C. C. A., 5th Cir.); Ohio Valley Bank Co. v. Mack, 163 Fed. 155, 158, 89 C. C. A. 605, 24 L. R. A. (N. S.) 184 (C. C. A., 6th Cir.). There are facts of that kind in this case, apparently overlooked by the referee, the inferences to be drawn from which, I think, are quite con-

clusive. The order directing the property to be sold provided for its sale "free and clear of *all outstanding liens or incumbrances."* This language would unquestionably include taxes which were then liens. It was apparently thus construed, and properly so, I think, by the purchaser. The trustee had no right to sell differently than the referee's order authorized him to do. I have not before me the report of sale, but the order confirming it recites the sale "free and clear of *all* incumbrances for $25,000." After the sale was confirmed, the trustee in bankruptcy presented, in effect, a petition asking authorization to pay the taxes, and an order was made directing him to do so. The payment was accordingly made out of the moneys which had been deposited by the purchaser pursuant to the before-mentioned order of the referee. In none of these orders, nor in the petition, is there any mention that the property was to be, or had been, sold subject to taxes, and every indication is that the parties considered that the taxes should be paid by the trustee in bankruptcy out of the purchase price of the property. No demand or request was made upon the purchaser that he should pay them. In addition, the amount due at that time, for principal and interest on the bonds, was $22,350, the taxes were approximately $1,250, and the trustee's certificate, which, by consent, had become a prior lien to the mortgage, amounted to $1,000 and interest. The aggregate of these sums was approximately the amount bid by the mortgage trustee. The next highest bid was $15,000. Under these circumstances, it is inconceivable that the mortgage trustee would have bid more than enough to cover the principal and interest due on the bonds and the other charges which were prior thereto, because he would thereby create a fund for the payment of the expenses of administration, which he had theretofore consistently contended could not be paid out of the fund realized from the sale of the mortgaged property, to the prejudice of his security.

If it were the understanding of the trustee in bankruptcy that the property was sold subject to the taxes, it would manifestly be unjust at this late date to permit him to assume a position contrary to the terms of the order by which he was authorized to sell, and contrary to the apparent understanding of the purchaser, which the trustee's subsequent actions could have but tended to confirm. It is contended that the inference above drawn from the payment of the taxes by the trustee in bankruptcy is not proper, because it was his duty, if he had funds in hand, to pay the taxes before any distribution to creditors. But this begs the question, for his action in paying them was quite as consistent with the theory that he was discharging a lien on the property which it was his duty to discharge in order to comply with the order of sale. . This, coupled with the fact that he did not assume to advise the purchaser that he was paying them for him, which, if he were doing so, would have been his duty, in view of the order of sale and the other circumstances, nullifies the trustee's contention.

Attention is also directed to a clause in the order directing the payment of the taxes, admittedly inserted at the suggestion of the attorney for the bondholders, to the effect that the consent by the mortgage trustee to the payment of the taxes out of the funds then in the hands of the trustee in bankruptcy should not preclude the for-

mer, in the event of further assets applicable to the payment of claims against the bankrupt being discovered, from presenting a petition to the court asking for the repayment of the moneys then authorized by the court to be paid for taxes. It is not at all clear to me what inference favorable to the trustee in bankruptcy's present position it is thought can be drawn from this clause. If it had been the understanding of the mortgage trustee that he had bought the property subject to taxes, there would have been no conceivable reason for inserting a clause of that kind in the order, because he would have been under an obligation to pay the taxes, which the collection of further assets of the estate could have in no way changed. I am therefore constrained to find that the property was sold free and discharged of the lien of the taxes.

[3] It remains to consider the important question in the case, which is: What fees, costs, and expenses of administration may be properly charged against a fund realized by a trustee in bankruptcy from the sale of a property upon which there are valid and unquestioned liens, when the property is administered and sold by him free and discharged of the liens, without the consent of the lienholders, and produces only substantially enough to pay the amount due thereon? This question has been the subject of several reported decisions. The Circuit Court of Appeals of this circuit, as well as the courts in other circuits, have recognized a clear distinction between cases where the lienholder has either expressly or impliedly consented to the administration and sale of the property free and discharged of his lien, and cases where he has opposed such a course, and have applied different rules to the two classes of cases. In re Vulcan Foundry & Machine Company, 180 Fed. 671, 103 C. C. A. 637 (C. C. A., 3d Cir.); In re Torchia, 188 Fed. 207, 110 C. C. A. 248 (C. C. A., 3d Cir.); In re Howard (D. C., N. D. N. Y.) 207 Fed. 402; In re Williams' Estate (Anheuser Busch Brewing Ass'n v. Harrison) 156 Fed. 934, 84 C. C. A. 434 (C. C. A., 9th Cir.); In re Freeman (D. C. Ga.) 190 Fed. 48; In re Chambersburg Silk Manufacturing Company (D. C., M. D. Pa.) 190 Fed. 411; In re Clark Coal & Coke Company (D. C., W. D. Pa.) 173 Fed. 658. Thus, in the Torchia Case, where it was held that the lienholders had consented by "necessary implication" to all that had been done by the trustee in the care and sale of the incumbered property, the Circuit Court of Appeals, after pointing out the difference between the situations in that case and in the earlier Vulcan Foundry Case, affirmed an order which allowed commissions to the trustee and referee on the proceeds of sale, and compensation to counsel for the trustee, the receiver, and the bankrupt, and certain expenses incurred in the care and preservation of the incumbered property, all of which had to be paid out of the proceeds realized from the sale of the incumbered property, which were not sufficient to discharge the liens.

On the other hand, in the Vulcan Foundry Case, where the lienholders had objected to a sale free of their liens, and had not consented to the care and preservation of the property by the trustee, the same court reached an entirely different conclusion, and expressed radically different views as to what could be properly charged against

the lienholders under such circumstances. While no general rule on this question is therein announced, I think the opinion quite clearly indicates that there is not to be charged such expenses as were incurred in the interests of the general creditors as distinguished from the lienholders, and which the latter would not at all events have been obliged to incur in order to protect and realize upon their liens. In this class must be included the general expenses of administration and the care and preservation of the property, when the latter was primarily for the benefit of the general creditors or incurred in their interests, without the express or implied consent of the lienholder, and which the latter would not certainly have had to incur. Such a rule is in entire harmony with the decisions in other districts. In re Howard, supra; In re Stewart (D. C., La.) 193 Fed. 791; In re Freeman, supra; In re Clark Coal & Coke Company, supra; In re Prince & Walter (D. C., M. D. Pa.) 131 Fed. 546; In re Williams, supra; In re Davis (D. C., E. D. N. Y.) 155 Fed. 671; In re Utt, 105 Fed. 754, 45 C. C. A. 32 (C. C. A., 7th Cir.).

It may be considered as equally well settled, in other districts, where the lienholder does not consent to the sale of the property discharged of his lien, that if the general estate is insufficient, he can be charged with the necessary costs and expenses of the sale (In re Howard, supra; In re Clark Coal & Coke Company, supra; In re Prince & Walter, supra); and in some jurisdictions this has been limited to what it would have cost the lienholder to have foreclosed his lien in the state court, on the theory that the proceedings in bankruptcy have relieved him from the necessity of foreclosure, and that it is equitable that he should pay at least what it would have cost him to foreclose in another forum (In re Zehner [D. C., E. D. La.] 193 Fed. 791; In re Utt, supra; In re Stewart, supra).

I do not understand the decision in the Vulcan Foundry Case to hold, where the lienholder has not consented, that the costs of the sale may not be properly charged against him. It is entirely equitable and just that such costs should be so charged, because the lienholder has himself been benefited to that extent, in being relieved of the certain necessity of realizing upon his lien and the expense incident thereto; but the same reason would make it unjust to charge him with more than he would have been required to expend had he been permitted to choose his own forum. This I think accords with the spirit of the decision in the Vulcan Foundry Case. If he has voluntarily come into the court of bankruptcy, seeking a sale of the property, and thus a liquidation of his lien, or has consented to being brought in, it is entirely just and proper, as was said in Re Williams, supra, that he should be charged with the costs of such court, appropriate to such enforcement. I therefore conclude that the rule which should govern in a case such as this, where the lienholder has objected to the sale of the property free and clear of his lien, and the administering of it in bankruptcy, is that he cannot be charged with the general expenses of administration, including referee's, trustee's, and counsel fees, or the expenses of the care and preservation of the property, which were not incurred with his consent, except when the latter were for his benefit, as distinguished from the general creditors, and were such as he would of necessity

have had to incur, nor with any costs and expenses of the sale of the property in excess of those which he would have been required to expend in order to foreclose his lien in an appropriate forum of his own choice.

Viewing the order in question in the light of this rule, it is clear that the same was erroneous. The moneys directed to be paid to the state court receiver were the balance of his court costs and fees allowed for services as counsel and as receiver. He did not sell the property; in fact, he was powerless to sell free and clear of the lien under the New Jersey statute, unless its validity were brought in question. It does not appear what part of the balance of the fees allowed him represents services in the preservation and care of the property, and what part represents his services as receiver and counsel in other matters pertaining to the estate. The latter, being general expenses of administration, cannot, under the circumstances of this case, be charged against the lienholder. It does appear sufficiently that what he did in the care and preservation of the mortgaged property was without the express or implied assent of the lienholder, and under the circumstances of the case it must be presumed to have been primarily for the benefit of the general creditors. A charge for such services cannot be made against the mortgagee. This likewise applies to the moneys directed to be paid to Mr. Summerill, as they represent the fees allowed him by the Court of Chancery as counsel for the complainants in that suit. The trustee in bankruptcy is entitled to only such commissions as would have been payable to a sheriff or a special master (they are the same in New Jersey on a foreclosure sale). These would not have exceeded, figured on the amount of the purchase price, $167.

The allowance to counsel for the trustee is stated to be for "compensation for services rendered in connection with the sale"; but, if this means services other than those of a strictly legal nature, they cannot be charged against the lienholder, because the above allowance to the trustee is the full compensation for everything connected with the sale which a sheriff or special master would have been entitled to receive. I think, however, that he may be properly allowed a fee for preparing the petition for sale and the other papers necessary to consummate the sale and vest the title in the purchaser, and for his necessary appearance in court in connection therewith. If the trustee under the mortgage had foreclosed in another forum, he would have had to employ and pay counsel. The strictly legal services which were rendered by counsel for the trustee in connection with the sale relieved him of that necessity. The allowance for these services should not, however, exceed $100. The objection to the allowance to the auctioneer having been withdrawn at the argument, it will not be disturbed. There may also be charged against the lienholder such fees, not commissions, of the referee, as were strictly incident to the sale.

After charging the taxes and the amount of the trustee's certificate against the difference between the purchase price and the amount due on the bonds, a small balance remains. Part of this has already been disbursed for general expenses of administration. The balance must be used, as far as it will go, in paying the allowances which have been

determined to be proper, and the mortgagee charged only with the difference between them and the balance remaining in the general estate. If other moneys are afterwards secured by the trustee, the bondholders may petition for any deficiency between the amount due on their bonds and the amount actually paid to them.

It seems unnecessary to determine whether the first-mentioned order of the referee, requiring the deposit of cash, was in any respect erroneous. It has already been determined what may be properly charged against the moneys due on the bonds, and the bondholders will be entitled, either directly or through their trustee, upon proper application, to the balance of the purchase price, providing, of course, that any of the bonds are not then subject to attachment or other independent liens, and providing there were no other liens on the property prior to their mortgage.

The order of May 12, 1915, must be reversed, and the matter remanded to the referee, with instructions to enter an order in accordance with these conclusions.