In re WEST.

(District Court, M. D. Pennsylvania. May 20, 1916.)

No. 2899.

1. BANKRUPTCY ⬤262(3)—SALES OF PROPERTY—AUTHORITY OF COURT.

The bankruptcy court may sell property of the bankrupt discharged of liens.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 365; Dec. Dig. ⬤262(3).]

2. BANKRUPTCY ⬤474—AUTHORITY OF COURT—JURISDICTION.

Where a bankrupt's property is sold free from liens with the consent of the lienholders, necessary costs of sale, including commissions of the referee and trustee, may be allowed, regardless of whether there is a surplus above the amount of the lien.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 878–884; Dec. Dig. ⬤474.]

3. BANKRUPTCY ⬤474—SALE OF PROPERTY—LIENS.

Where holders of liens against property of a bankrupt made no protest at its sale discharged of liens, and bought it in, their consent is presumed from their acquiescence, and reasonable and necessary costs incurred in the sale should be paid out of the proceeds, though the amount realized be insufficient to satisfy the lien.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 878–884; Dec. Dig. ⬤474.]

4. BANKRUPTCY ⬤368—SALES—COMMISSIONS OF TRUSTEE.

Where a trustee in bankruptcy sold property free from liens, and the lienholders who bought it in paid only part of the purchase price in cash, the remainder being credited upon the amount of their liens, the trustee is entitled to commissions computed on the sale price, and not the price paid in cash.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ⬤368.]

5. BANKRUPTCY ⬤474—SALES—COUNSEL FEES.

Where property of the bankrupt is sold free from liens, reasonable counsel fees may be allowed out of the proceeds, though they did not equal the amount of the liens; the lienholders acquiescing.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 878–884; Dec. Dig. ⬤474.]

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the matter of the bankruptcy of Thomas West. Exceptions to referee's report of audit and petition for review. Report of audit referred to referee, with instructions to modify.

J. Q. Creveling and H. L. Freeman, both of Wilkes-Barre, Pa., for trustee.

G. J. Clark, A. H. James, and W. A. Millard, all of Wilkes-Barre, Pa., for creditors.

WITMER, District Judge. The request for review of the order of the referee was not in time or in proper form. However, considering the matter on its merits, the action of the referee must be chiefly sustained. The trustee sold the real estate of the bankrupt discharged of the mortgage liens, which exceeded the total realized. The lienors, not having actually consented to the order, nevertheless attended the sale and became the purchasers. On auditing the account of the trustee, the referee allowed the following credits: Commissions of referee, $407.61; trustee, $885.61; attorney for trustee, $200; and receiver's costs, $264.88. This action of the referee was assigned as error and is to be reviewed.

[1, 2] The authority to sell discharged of liens is undoubted, and it is equally well settled that, under certain circumstances, the necessary costs of sale, including the commissions of referee and trustee, with reasonable counsel fees, are allowed. In the controlling case, In re Vulcan Foundry & Machine Co., 180 Fed. 671, 103 C. C. A. 637, Judge McPherson in delivering the opinion of the Court of Appeals, said:

"It is no doubt true that the federal tribunals support the power of the District Court to sell a bankrupt's real estate discharged of liens—and to that extent the position of a lien is undoubtedly affected—but care is always taken to protect the liens by transferring them to the fund produced by the sale, and their virtual ownership of the property is thus effectively admitted. It is also true that in some cases certain expenses have been charged against lienholders, for example, the expense of selling the incumbered property, and such a charge may no doubt be warranted under some conditions. It would certainly be warranted if the lienholders came into the District Court (as they did in several reported cases) and asked that the sale might be made by that tribunal, for otherwise they would themselves be put to a similar expense in proceeding upon their liens in another forum. But where it is sought to charge a lienholder with the cost of preserving and administering the incumbered property, as distinguished from the cost of its sale, it becomes necessary to consider the particular situation with great care, paying due regard to the rights of those who are in equity part owners of the property, for they cannot be deprived of their valuable interest, except in strict accordance with legal or equitable rules. Especially is this true when a lienholder stands upon his lawful rights, and does not assent, expressly or by necessary implication, to the acts for which he is afterwards asked to pay. To make such charges a prior lien upon the fund produced by a sale in effect compels an owner to pay for what he has never ordered—may, indeed, have strenuously opposed—and, under the guise of protecting his interests, may perhaps impair them seriously."

[3] Applying the principle here laid down, it may be conceded that the administration of the estate by the receiver, and the sale by the trustee, was solely with a view of realizing for the general creditors, and not for the benefit of the lienholders. Having failed in

this, there would be no reason why the experiment should be charged up to the lienholders, and the expenses deducted from their securities, had they not participated in the same. There is, however, no evidence here that such participation extended to the costs incurred by the receiver, and in the absence of good reason why they should bear the same, such costs are disallowed. Referring to the expenses of sale, it may be said that, while they did not affirmatively assent to the order entered by the referee, yet they made no protest, and actually became the purchasers of the property sold. By their acquiescence and participation in such sale, their consent is assumed, and it is presumed that they intended that reasonable and necessary costs incurred in the sale of the estate should be paid out of the proceeds realized, even though their liens be postponed thereby.

[4] It appears that of the purchase price of the real estate, $42,-325, only $5,111.61 was actually paid to the trustee, and that the balance was credited to the liens of the purchasers, and therefore, it is argued by counsel, commissions should not be allowed on the money that did not pass between the parties. To this I cannot assent. The arrangement was for the benefit of the lienholders, and, while a nominal sum only was passed, the actual amount bid to redeem their security is the amount which the trustee constructively disbursed. In re Sanford Co. (D. C.) 126 Fed. 888; In re Cramond (D. C.) 145 Fed. 966, 17 Am. Bankr. Rep. 22; Varney v. Harlow, 210 Fed. 824, 127 C. C. A. 374, 31 Am. Bankr. Rep. 339. The reasoning of Judge Rose in the latter case applies here with force. It was there said:

"It would hardly seem that the referee's rights should be different merely because, for the convenience of the bondholders, they were excused from paying $90,000 and getting $87,955 back. The payment of the latter sum was as effectually made to them by crediting it on their bonds as it could have been in any other form. It does not seem wise to make substantial rights depend upon such unessential differences. The way of making payments adopted in this case is far the simplest and most convenient for everybody. Nothing is to be gained by holding that if it be adopted the referee will lose what would come to him if the more roundabout and troublesome method of doing the same thing were employed. The learned judge below recognized that the trustee was entitled to commissions on the full amount of the purchase price, as being a sum disbursed by him or turned over to lienholders."

[5] Commissions will be allowed on the entire amount of the purchase money, but the amount of the trustee's commissions, reported by the referee, $885.61, is in excess of the statutory allowance, and must be reduced to $563.25. Since reasonable counsel fees are allowed as a proper expense of sale and in raising a fund (In re Torchia [D. C.] 26 Am. Bankr. Rep. 189, 185 Fed. 576), the allowance to counsel will not be disturbed.

The report of audit is referred back to the referee, with instructions to make distribution in accordance herewith.