### LIDDON & BRO. v. SMITH et al.

(Circuit Court of Appeals, Fifth Circuit. January 31, 1905.)

1. BANKRUPTCY—APPEALS—CONTROVERSIES ARISING IN BANKRUPTCY PROCEEDINGS.

Proceedings on a petition filed in a bankruptcy court by a mortgagee of a bankrupt asserting a right to the proceeds of the mortgaged property which has been sold by the trustee are not bankruptcy proceedings, but constitute a controversy arising in bankruptcy proceedings, reviewable by the Circuit Court of Appeals in the exercise of its general appellate jurisdiction under Bankr. Act July 1, 1898, c. 541, § 24a, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3431].

[Ed. Note.—Appeal and review in bankruptcy cases, see note to In re Eggert. 43 C. C. A. 9.]

**2. SAME—RIGHTS OF MORTGAGEE.**

> Where a purchaser of property subject to a mortgage pending a suit in the state court to foreclose instituted voluntary proceedings in bankruptcy, manifestly intended to be adverse to the interests of the mortgagee, his attorney should not be made an allowance "for valuable services rendered in preserving" the mortgaged property, and given a lien therefor prior to the mortgage on the proceeds of the property when sold by the trustee.

Appeal from the District Court of the United States for the Northern District of Florida.

Benj. S. Liddon, for appellants.

John M. Calhoun and Robt. J. Boone, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. A. B. Heath, one of the appellees, owned and was operating a sawmill near the town of Sneads, Fla., in October, 1901. On the 31st day of that month he made a mortgage in favor of the appellants, Liddon & Bro., covering the sawmill complete, describing its constituents, and providing in the mortgage that it should embrace also all other features or attachments then upon the mill or that might thereafter be added thereto, and all lumber, deal and square timber then upon the millyard, or that might be cut by the mill during the existence of the mortgage. It also embraced 40 acres of land on which the other property described in the mortgage was situated. This mortgage was given to secure certain promissory notes aggregating $800, a part of which was for money then due by the mortgagor to the mortgagees, but the greater part was to cover advances to be made by the mortgagees to the mortgagor in the prosecution of his business. In April, 1902, Heath transferred his sawmill property and its operation to the appellee W. B. Smith by an oral agreement, the terms of which are not clearly shown. It appears, however, that Smith undertook to discharge the notes and mortgage, and he made a payment thereon at the time of the transfer. After that Smith appears to have had the active management of the operation of the mill, but Heath remained in some way connected with the business, and each obtained supplies from the appellants on an account that was kept in the name of Smith. In June, 1903, Smith abandoned the business, and went to Georgia, where he had formerly resided, and since that time has not been in Florida. A few days after Smith's departure the appellants commenced proceedings in the state court to foreclose their mortgage, and by proper process from that court the mortgaged property was seized at the appellants' suit. After this seizure Heath had a consultation with Mr. J. M. Calhoun in reference to these matters, which resulted in Heath's going to Georgia to see Smith. Thereafter Calhoun, as attorney for Smith, prepared a petition in the usual form for voluntary bankruptcy, with the required schedules attached, and these papers, being sent by mail to Smith in Georgia, were sworn to and subscribed by him July 9, 1903, and, being returned to Calhoun, were filed in court July 15th. There being no judge in the district, the petition was, on the same day that it was filed, referred to C. L. Shine, one of the referees in bankruptcy of that court. On the same day W. B.

Smith, by petition signed "John M. Calhoun, Attorney for Petitioner," and sworn to by Calhoun as such attorney, applied to the referee for the appointment of a receiver, and suggested that A. B. Heath be appointed. On July 24th the referee made the adjudication in bankruptcy, and on that day made his order appointing A. B. Heath receiver to take possession and custody of the bankrupt's estate. On July 28th the referee approved the bond of the receiver, but this bond appears to have been filed in court July 1, 1904, and the proof shows that the receiver did not take possession of the estate. The "Schedule A–2" attached to the original petition showed that the appellants held a mortgage upon the sawmill machinery and four mules for the amount of $400, and "Schedule A–3" showed that they held an unsecured open account, contracted in 1902–03, for $400. The appellants made due proof of their claim of an unsecured open account. A trustee was duly appointed, who, on October 2, 1903, applied to the referee for authority to sell all of the property embraced in the inventory and schedules free from liens, and that the money be held to abide the further order of the court. Attached to this application was the consent of certain creditors, including Liddon & Bro. Thereupon, on the same day, the referee made an order which authorized the trustee to sell the property at private sale free from all liens thereon. On October 10th the trustee submitted his report of the sale, and on October 23d the appellants filed with the referee their petition setting up the notes and mortgage held by them, with the prayer that the trustee should be ordered to pay to them the sum of $446.18, less the necessary expenses of the sale and charges in caring for the property. This petition the appellees severely contested. After a protracted hearing the referee filed his report, to which the appellees excepted, and, their exceptions being overruled by the referee, the matter was brought before the judge, who, on July 1, 1904, passed the decree from which this appeal is taken.

The appellees have moved to dismiss the appeal, stating numerous grounds, only one of which we deem it necessary to discuss. It is stated as follows: "Because the judgment herein is not one * * * allowing or rejecting a debt or a claim of five hundred dollars or over." This assignment assumes that the appeal in this case could only be taken under section 25a of Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432], and it appears that the appellants considered that they were entitled to appeal under that section. It will have been observed that the appellants did not claim that there was as much as $500 due them on their unsecured open account, which was the only claim of which they made proof under section 57 of Act July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]. Their mortgage debt they did not present for allowance against the bankrupt's estate, but made it the basis of their petition praying that they might have turned over to them such portion of the proceeds of the sale of the mortgaged property as they showed themselves to be entitled to receive under the mortgage lien. The words "bankruptcy proceedings" are used in sections 23, 24, and 25, 30 Stat. 552, 553 [U. S. Comp. St. 1901, pp. 3431, 3432], in contradistinction to controversies arising out of the settlement of the estates of bankrupts. Denver First National Bank v. Klug, 186 U. S. 205, 22 Sup. Ct. 899, 46 L. Ed. 1127. The appellants asserted title to

the proceeds of the mortgaged property in the possession of the trustee by the petition they filed, and this raised a distinct and separable suit, and the controversy thereon may be treated as one of those controversies arising in bankruptcy proceedings over which the Circuit Court of Appeals can, under section 24a, exercise appellate jurisdiction as in other cases. Hewit v. Berlin Machine Works, 194 U. S. 300, 24 Sup Ct. 690, 48 L. Ed. 986. The motion to dismiss the appeal must therefore be denied, but in considering the appeal we are limited to the controversy over the right of the appellants to the proceeds of the sale of the mortgaged property, which controversy embraces, of course, the correct ascertainment of the balance due the appellants on their notes and mortgage, and the amount of the cost and charges, which have a superior rank to their claim against the proceeds of the mortgaged property.

Appellants contend, first, that the court erred in adjudging that there was only $291.41 due them upon the mortgage; second, that the court erred in adjudging that the attorneys for the bankrupt had rendered valuable services in connection with the preservation of the estate, and that his claim of $122.50 is a prior claim, and must be paid as other costs; third, that the court erred in adjudging that A. B. Heath was entitled to be paid the sum of $65 as costs in connection with preserving the estate.

The printed record occupies 164 pages, and the statement of the proceedings which it shows is very much involved, and exhibits such a want of orderly conduct and such a manifest bitterness of tone indulged in the whole controversy that we do not deem it necessary or advisable to undertake to formulate in detail what the record, in our view of it, shows. After a laborious examination of the whole record, we are satisfied that the appellants' first suggestion of error is not well taken, and that the judge's finding of the amount due on the notes and mortgage, as stated by him in his decree, is fully supported by the evidence in the case. From the same laborious and careful examination of the whole record, we conclude that the second and third suggestions of error are well taken. This bankruptcy proceeding was nominally voluntary, but it is manifest that it was procured by Heath, and conducted by him and his lawyer, Calhoun, in a most inveterate opposition to the valid secured claim of the appellants. While we may not, in such a case as this, review the action of the court of bankruptcy in the allowance of these claims as claims against the estate of the bankrupt, we are authorized and required to adjudge whether they should take rank superior to the mortgage against the proceeds of the mortgaged property. That property, at the time the petition in bankruptcy was filed, was in the custody of the state court on an application of the mortgagees to foreclose a lien on it that had been given long before the bankrupt had any interest whatever in the property. This lien the schedules prepared by Calhoun—manifestly with the assistance of Heath, and verified by Smith—recognized as existing for the sum of $400; and in the statement thereof made by the judge in the decree appealed from it appears that at the date of that decree there remained due on the claim, after allowing all the payments that had been made thereon, the sum of $491.40, from which sum the judge—very properly, we

think—deducted $200 on account of the 40 acres of land which were embraced in the mortgage, thus reducing to the sum of $291.40 this charge against the proceeds now in the hands of the trustee. It seems manifest to us that the services rendered by the attorney, J. M. Calhoun, nominally for the bankrupt, had no legitimate connection with the preservation of the estate, and that under the conditions existing it would be most inequitable to allow his account for fees therefor to take rank of the mortgagees' claim as a charge against the proceeds of the sale of the mortgaged property. It also appears to us that A. B. Heath rendered no service in the preservation of the property which will not be amply compensated by the amount allowed him by the referee. We therefore are constrained to reverse the decree of the District Court in adjudging to J. M. Calhoun $122.50 as a claim prior in right to that of the mortgagees against the proceeds of the sale of the mortgaged property, and also to reverse so much of the decree as adjudges $65 to A. B. Heath to take rank as costs in connection with the preservation of the estate superior to the claim of appellants, and we allow to him only the amount allowed him by the referee to which action of the referee the appellants have not excepted.

With these amendments, the decree, so far as it is before us on this appeal, we affirm.