## ROBINSON v. DICKEY.

Circuit Court of Appeals, Third Circuit.
October 3, 1929.

Rehearing Denied January 10, 1930.

No. 4064.

See, also, 18 F.(2d) 682.

Arthur O. Fording, of Pittsburgh, Pa., and John C. Davis, of Norfolk Va., for appellant.

Philip N. Shettig, of Ebensburg, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is a controversy between the trustee under a mortgage representing bondholders and the trustee in bankruptcy representing general creditors, as to whether the mortgaged property should be liable for the expenses of maintaining it pending the trial of several disputed matters in bankruptcy.

The property in question was a coal mine belonging to the Conemaugh Coal Mining Corporation. A bond issue of $250,000, against the property was secured by a mortgage dated March 31, 1917, and George T. Robinson was trustee thereunder.

On March 5, 1926, a stockholders' bill against the property was filed praying for the appointment of a receiver on the ground of the inability of the corporation to meet its obligations. The corporation appeared and upon its consent a receiver was appointed.

On April 29, 1926, the court of common pleas of Cambria county, Pa., granted permission to George T. Robinson, trustee, for the mortgage bondholders, to foreclose the mortgage, and a bill for foreclosure was filed that day. While the state receivership was going on, an involuntary petition in bankruptcy was filed against the corporation.

On April 29, 1926, notwithstanding the bankruptcy proceedings, Mr. Robinson filed a bill in the common pleas court of Cambria county praying for a decree of foreclosure of the mortgage. The receiver appointed by the state court filed an answer to the bill on May 5, 1926, wherein it alleged that there was no equity for the general creditors in the mortgaged property; that it would be for their best interest to foreclose the mortgage, and so joined in the prayer for the same.

On the next day, May 6, 1926, the corporation was adjudicated a bankrupt, and the following day a receiver in bankruptcy was appointed. On September 8, 1926, the referee on petition of the trustees in bankruptcy, who had in the meantime been elected, signed an order authorizing them to disclaim any interest in the mortgaged premises, and on October 11, 1926, the trustees in bankruptcy surrendered the mortgaged property to the trustee for the bondholders.

On November 5, 1926, some of the creditors petitioned the District Court to restrain the foreclosure of the mortgage on the grounds that the bonds had been issued without consideration; that there was a substantial value for general creditors in the mortgaged property; that the disclaimer by the trustees in bankruptcy should not have been made; that the property would bring a better price if kept as a going concern— and prayed for (a) a review of the referee's order permitting the disclaimer; (b) an injunction against the sale which was to take place within a few days; (c) removal of the trustees in bankruptcy and the appointment of a temporary receiver with instructions to operate; and (d) directions to the receiver to petition the state court to open the decree of foreclosure and inquire into the validity of the bonds. The District Court heard the petition, reversed the order allowing the disclaimer, removed the trustees in bankruptcy, chiefly on account of the "hopeless discord" among them, enjoined the sale, appointed a temporary receiver and instructed him to apply to the state court to open its decree of foreclosure and consider the validity of the bonds. The receiver did as directed and thereafter reported to the District Court that the state court had heard and considered the question of the validity of the bonds and refused to reopen the case. Thereupon the District Judge dissolved the injunction, affirmed the disclaimer, and directed the receiver to redeliver possession of the property to the trustee for the bondholders, but required him to give bond conditioned for the payment of all expenses up to $15,000 for the maintenance of the mortgaged property while it was in the custody of the state and federal courts if it should find such a charge equitable.

The property was sold on January 15, 1927, to the bondholders for $90,000, and the question at issue here is, who should bear the expenses of the maintenance of the mortgaged property while it was in the custody of the state and federal courts, the bankruptcy estate or the mortgaged property, the general creditors or the bondholders. The various court receivers and trustees spent under the direction of the courts $16,002.43, and the trustee for the bondholders spent $1,800 while it was in his custody. The District Court held that the expenses should be borne by the trustee for the bondholders to the extent of the bond given by

him upon the surrender of the property to him.

The general rule of law, as stated by the learned District Judge is that property of the bankrupt subject to a mortgage lien is liable for cost and bankruptcy administration expenses only when there is a surplus realized at the sale of more than enough to pay the mortgage debt and interest. Spencer v. Taylor Creek Ditch Co. (C. C. A. 9) 194 F. 635; American Engineering Co. v. Metropolitan By-Products Co. (C. C. A. 2) 280 F. 677; MacGregor v. Johnson-Cowdin-Emmerich (C. C. A. 2) 31 F.(2d) 270. The reason for the rule as stated by this court in the case of In re Vulcan Foundry & Machine Co., 180 F. 671, is that the receiver and the trustee in bankruptcy are acting, not on the authority of the lienholders and for their interest, but on the authority of the court and for the interest of the general creditors. When acting in their behalf and spending money for their benefit, it is only just that they should pay the bill. But, when lienholders do not object and expressly or impliedly consent to the expenditure of money by the trustee in bankruptcy for the maintenance of the mortgaged property, an exception to the general rule prevails, and the expenses thus incurred must be paid by the lienholders.

In this case the property did not sell for enough to pay the mortgage debt. There was no objection on the part of the lienholders to the expenditure of the money in question. It was necessary to keep the water pumped out of the mines in order to protect them from serious injury and ruin. The money in question was expended for this purpose, and the lienholders were glad enough to have it done during the time the foreclosure was stayed. The District Judge felt that, upon the facts alleged in the petition, he was justified in restraining the foreclosure until the validity of the bonds could be considered, and we do not think that he acted unwisely or erred in so doing. Consequently the facts in this case constitute an exception to the rule, and the bondholders should pay the expenses incurred to save their property, for they would have been compelled to expend the money here in question in their own interest had the foreclosure not been stayed. In re New York v. Philadelphia Package Co. (D. C.) 225 F. 219; In re Torchia (C. C. A. 3) 188 F. 207; MacGregor v. Johnson-Gowdin-Emmerich (C. C. A. 2) 31 F.(2d) 270.

The question remains as to whether the bondholders should pay all or only a portion of the expenditures incurred.

The learned District Judge found that the various receivers and trustees expended by authority of the bankruptcy court and state court $16,002.43 for the care and maintenance of the property subject to the lien of the mortgage. This amount was stated in the facts submitted to the court to be correct. However, these figures were upon re-examination found to be incorrect, and $14,690.81 is now admitted to be the correct amount which is made up as follows:

| | |
|---|---|
| Amount expended or incurred by receivers appointed by the state court prior to filing petition in bankruptcy | $ 2,939 70 |
| Amount expended or incurred by receivers appointed by the state court subsequent to filing petition in bankruptcy and prior to adjudication in bankruptcy and appointment of a receiver by the United States District Court | 810 15 |
| Amount expended or incurred by the receiver appointed by the United States District Court and by the trustees who succeeded him prior to surrender of possession to bondholders | 8,330 77 |
| Amount expended or incurred by receiver substituted for trustees by United States District Court subsequent to repossessing and prior to surrender of possession to bondholders | 2,610 19 |
| | $14,690 81 |

The appellant contends that none of these expenses should be borne by the bond holders. Appellee says that all should be borne by them except the $2,610.19 spent by the receiver substituted for the trustees by the United States District Court subsequent to repossessing and prior to the surrender of possession to the bondholders; that this amount should not be paid by the bondholders, for their trustee could have sold the property under foreclosure in November, 1926, when the property was in his possession and they would not have been compelled to incur this expense. But the District Court found that, on the evidence presented to it, there was justification in staying the foreclosure proceedings pending the decision of the validity of the bonds secured by the mortgage which made it necessary to spend the money for the preservation of the mortgaged property and "the sums expended under the authority of the courts for the care and maintenance of the mortgaged property in question, would have been disbursed in whatever custody the property might have been." In view of the fact that a committee for the bondholders purchased the property for their protection for $90,000 and the amount due on outstanding bonds was more than $200,000, this sum of $2,610.19 would

necessarily have been incurred by them if the sale had taken place in November, 1926. But counsel for the trustee in bankruptcy stated at the argument that he felt that the estate in bankruptcy should bear this expense, and, as representing this estate, expressed his willingness to have it do so. While the bondholders think that they should not be called upon to bear any of the expenses, yet they, of course, agree that the trustee in bankruptcy should pay at least this amount of $2,610.19.

Accordingly, upon this agreement of all parties, the decree should be modified by subtracting the $2,610.19 from $14,690.81, admittedly the amount spent, which leaves a balance of $12,080.62 to be paid by the bondholders for the maintenance of their property, and, as thus modified, the decree is affirmed.