## In re BOWEN.

### No. 21101.

District Court, E. D. Pennsylvania.

Sept. 3, 1942.

Supplemental Opinion Nov. 13, 1942.

David Getz, of Allentown, Pa., Herbert S. Leman, of New York City, and Herman H. Krekstein, of Philadelphia, Pa., for petitioner Henry Baker.

Fred B. Gernerd, of Allentown, Pa., for trustee.

Charles M. Bolich, of Allentown, Pa., for bankrupt.

KALODNER, District Judge.

The bankrupt's estate consisted of real estate and a block of stock. The bankrupt owned five parcels of real estate, situated in Allentown, Lehigh County, Pennsylvania, all of which were encumbered by various mortgages, judgments, and tax liens of the Federal government. The stock was held by a creditor as collateral security for a loan.

Henry Baker, one of the petitioners who has filed the present certificate of review, owned five of the judgments. Prior to the bankruptcy proceedings he had issued execution on one of the judgments in the sum of $79,242.42 on one of the parcels of real estate (the Hamilton Street property) which was advertised for sale by the Sheriff of Lehigh County. On July 21, 1939, the bankrupt made an assignment for the benefit of creditors, and the assignees secured an order in the Court of Common Pleas of Lehigh County enjoining the sale. The assignees proceeded to advertise the sale of the real estate, and on November 8, 1939, the bankrupt filed his voluntary petition in bankruptcy and obtained an order from the referee to stay the sale.

As matters thus stood, the referee called the first meeting of creditors on December 8, 1939, and, at the outset, made the following statement (p. 04, N. T.) :

"An examination of the schedules discloses that this is a non-asset case and order was filed upon the bankrupt by the referee to deposit $50.00 as required by the rules to cover the costs of administration, but this was not done.

"The only assets shown in the schedules consist of real estate amounting to as appraised by the bankrupt $593,000. The debts shown amount to $950,166.66, and of this amount, with the exception of $150. rent and $7,050. unsecured claims, is all represented by liens and taxes.

"This meeting was called primarily for the purpose of giving the secured creditors an opportunity of getting together and if they saw fit to formulate a plan of liquidating this estate. *Under the law the administration costs and fees of the referee or the trustee are not deductible from any funds that should be applied to the payment of liens,* and therefore the referee does not propose to move in this estate unless the lien creditors will file a stipulation with the referee asking that the referee sell the real estate under the proper orders, and the statutory fees and costs may be deducted from the amounts passing through his hands for distribution." (Emphasis supplied.)

In accordance with the suggestion of the referee, David Getz, Esq., of counsel for Henry Baker, on the adjourned meeting of December 11, 1939, placed the following stipulation of record (pp. 07, 08, N. T.) :

"By Mr. Getz:

"On behalf of the lien creditors that I represent I am willing to stipulate that out of the amount that might be realized out of real estate owned by the bankrupt out of which fund distribution will be payable to lien creditors that a sum not to exceed $4,000. be retained by the referee for distribution of administration expenses in this estate, provided however that any fund realized out of the sale of personal property shall first be used for the payment of administration expenses.

"This statement is being made pursuant to request by the referee to the effect that because of the state of the record and it appearing that there will be no distribution for general creditors that before a trustee,

who might in the future be appointed, can sell the real estate and incur expenses in connection therewith that he be assured that there be a fund out of which the said expenses could be paid.

"Such portion of the expenses that are allocated toward the real estate fund are to be borne according to the proportion as the lien creditors realize in their dividend."

"By the Referee:

"And the expenses above referred to shall include the statutory fees of the referee and the trustee, and the lien holders will join with the trustee in all applications for the sale of real estate."

Counsel for the lien creditors joined in this stipulation in the record of the said meeting. The trustee and his counsel thereafter negotiated with various purchasers and petitioned the referee for leave to sell all the real estate of the bankrupt free of all encumbrances and liens. The trustee's petition sought to sell each of the parcels separately except two properties (the Ninth Street and the Hamilton Street properties) which he prayed to sell together as a unit. Counsel for Henry Baker objected to the sale of these properties as a unit, and the referee overruled his objection. The following remarks appear on the record of the minutes of the meeting of February 8, 1940 (pp. 046–047–048, N. T.):

"By Mr. Getz:

"Does this order provide for the sale of the Ninth Street and Hamilton Street jointly?

"By the Referee:

"Yes.

"By Mr. Getz:

"I would like to file objections to this method of sale and ask leave to present written objections to the referee.

"By the Referee:

"The order of the referee as to the sale has been made and any objections filed whether written or oral are overruled.

"By Mr. Getz:

"Will the referee please grant me an exception on the record?

"By the Referee:

"I can grant you one, but I doubt whether you are entitled to one. Grant Mr. Getz an exception."

\* \* \* \* \*

"By Mr. Getz:

"I would like to put on the record that inasmuch as there has been an objection to the order of the referee as to the method of the sale, and inasmuch as our stipulation which we made at the beginning of this proceeding was based upon the fact that the Hamilton Street property would be sold separately that I withdraw the offer to have the fund realized from the property subject to administration expenses.

"By the Referee:

"I want to call Mr. Getz's attention to the fact that there is no such reference in his statement with reference to the payment of costs of this proceeding out of funds which are distributed or payable to the lien creditors.

"I want to call your attention right now to the fact that I am not going to permit any further delay in the administration of this bankruptcy estate by tactics such as you have employed just now. The last statement is not in accordance with the previous statement made and we will continue with the administration of this estate without these unwarranted interferences.

"By Mr. Getz:

"I would like to place this on the record that I am only associate counsel in this matter. I am acting on instructions with associate counsel and I have at no time attempted to hamper or delay the proceedings. On the contrary have requested and desired to have these proceedings go forward as speedily as possible.

"By the Referee:

"The appearance of Mr. Getz in this case is entered without associate counsel and his statements that bind his client are binding upon his client."

The ruling of the referee on the joint sale was upon Baker's review, reversed by this court (35 F.Supp. 60).

Subsequently, in August, 1940, all the parcels of real estate were sold by the trustee free and clear of liens and encumbrances with the exception of the Linden and North Third Street properties, which were abandoned.

The amounts realized from the sale were as follows:

Hamilton Street property......$457,500.00
Ninth Street property.......... 35,000.00
Factory building............... 3,000.00
Vacant land........... 25.00

The proceeds from the sale of the real estate were not sufficient to pay off the liens and encumbrances, and produced nothing available for general creditors.

The audit of the trustee's first and partial account was had at a meeting before the referee on the 16th of December, 1940, wherein the referee announced that the account showed receipts of $497,525.60 and a balance of $149,134.60. At this meeting the various requests for allowances were considered as follows:

Robert E. Haas,
 Trustee's commissions.......$ 4,095.25
Fred B. Gernerd,
 Attorney for trustee........ 15,000.00
Charles M. Bolich,
 Attorney for bankrupt...... 2,500.00

The referee made a statement that he was entitled to a commission of $3,395.60 under the provisions of the Bankruptcy Act; approved the items spent or contracted for in the bankruptcy proceedings, and left open the items relating to the assignment for the benefit of the creditors which had been made prior to the bankruptcy.

Counsel for Henry Baker objected to all requests for allowances, including the referee's commissions, on the ground that they were in excess of the stipulation made at the hearing on December 11, 1939, which, he asserted, provided that only a sum not to exceed $4,000. could be charged against the lien holders for administration expenses. The referee overruled his objections. The referee orally allowed the request of the trustee in full, with the understanding that he might presently be paid $4,000 on account. The referee did not then pass on the request of the attorney for the trustee, but presently allowed him $5,000 on account. He also left open the request of the attorney for the bankrupt. The referee, however, stated that no payments whatsoever would be made in the face of counsel's objection, and that the trustee would hold up such payments until he was further directed by the referee. *No formal order of allowance was made in any instance.*

Much that transpired thereafter at private conferences with regard to allowances is in the realm of confusion and dispute. The various parties tried to get together and reach an agreement but apparently failed to do so. On March 11, 1941, the trustee made payments, each of $2,500, to himself as trustee, to the attorney for the trustee, and to the referee, "on account" of allowances. On December 3, 1941, the referee issued separate orders for allowances as follows:

To Fred B. Gernerd, Esq.,
Counsel for trustee..............$7500.00
 (Less $2500 received on account)
To Robert E. Haas, Esq.,
Trustee ........................ 5124.39
 (Less $2500 received on account)
To Robert L. Stuart, Esq.,
Referee ........................ 4053.06
 (Less $2500 received on account)
To Charles M. Bolich, Esq.,
Attorney for bankrupt............ 250.00
To Robt. E. Bittner & Robt. E. Haas
 as assignees for the benefit of
 creditors, each................. 100.00
To Fred B. Gernerd, Esq., to pay
 costs incident to assignment for
 benefit of creditors............. 9.75
To Samuel L. Butz, premium on as-
 signees' bond................... 100.00

Certificates of Review Nos. 1 to 6 inclusive deal with the appeal of Henry Baker, lien creditor, from the referee's orders of December 3, 1941, set forth above. Gernerd, Bolich and Bittner complain that the allowances made to them by the referee were inadequate; Gernerd also complains that the referee failed to make any allowance to him for his services as attorney for the assignees and merely allowed him $9.75 for costs expended. Baker's petition for review is primarily based on the contention that the allowances of $4,647.43 for expenses (to which there was no objection) at the audit of December 16, 1940, had already exceeded the $4,000 limit for administration expense stipulated, and that consequently any payments beyond the said $4,647.43 were unauthorized and improper.

The primary problem is the construction of the stipulation of December 11, 1939, and the extent to which a lien creditor is to be charged with the various allowances.

The stipulation provides "that out of the amount that might be realized out of real estate owned by the bankrupt out of which fund distribution will be payable to lien creditors that a sum not to exceed $4,000 be retained by the referee for distribution of *administration expenses* in this estate, provided however that any fund realized out of the sale of personal property shall

first be used for the payment of administration expenses" (Emphasis supplied.)

The referee in his opinion in support of his order for allowances states with respect to the $4,000 figure contained in the above stipulation "that it never was the intention to use this $4,000 for any other purposes except costs, such as advertising, auctioneers, taking testimony, and like expenditures".

■ The referee attaches to the record submitted to this court certain letters from counsel for the lien holders, as well as from counsel for the trustee, to the effect that only such was the intention. These letters are self-serving declarations attempting to construe an agreement which is properly for the determination of the court, and as such are improperly made a part of the record. See Bankruptcy Act, Section 39 sub. a(8), 11 U.S.C.A. § 67, sub. a(8), Collier on Bankruptcy, 14th Ed., Vol. 2, p. 1492. These letters will therefore be disregarded.

■ The stipulation recites that the $4,000 is to be used for "administration expenses". What is the meaning of the term "administration expenses"? Section 62 of the Bankruptcy Act, 11 U.S.C.A. § 102, under the title "Expenses of administering estates", mentions by name and hence contemplates referees, custodians, receivers, trustees, attorney for any of them, or any other attorney rendering services in proceedings under the Act. Indeed, even prior to the recent amplifications of this section the charges of all these were embraced in the expenses of administration. The referee has therefore patently erred in his construction of the stipulation.

The referee states in his opinion that at the hearing of February 8, 1941, counsel for Henry Baker withdrew his offer "to have the fund realized from the property subject to administration expenses". The relevant portions of the transcript of this meeting are quoted supra. Baker's counsel objected because two of the properties were being sold jointly, and stated his agreement to subject the lien to the $4,000 administration expenses was based "upon the fact" that the properties would be sold separately. The referee ruled that there was no such provision in the stipulation and overruled counsel's objection. In this regard the referee was correct, but having ruled that Baker was bound by the

stipulation, I cannot see how the referee can now disregard it. Additionally, this court reversed the referee on the question of the joint sale, and Baker has been placed in the status of his contention of separate sale whether or not the stipulation so provided. And even if we consider the stipulation as being thrown to the winds, the charges which are being made *qua* this *lien creditor* are exorbitant and unjustifiable, as will hereafter be discussed.

■ The referee further states that counsel for Baker has at no time denied "his acquiescence" to the three payments of $2,500 each (i. e., to the referee, the trustee, and counsel for the trustee), "nor does he raise the question in this review". It should be noted that the orders allowing compensation are dated December 3, 1941, and that the payments of the $2,500 on account were made March 11, 1941. The requests for allowances were considered at the hearing of December 16, 1940, and at that time the referee stated of record that because of the objections of Baker's counsel no payments would be made until the trustee was further directed by the referee. As previously stressed, no formal order was made by the referee directing the payments of March 11, 1941, before they were so made by the trustee. At the bar of this court on December 17, 1941, when Baker's counsel sought and obtained permission to review the orders for the allowances nunc pro tunc, it was asserted by Baker's counsel that he did not know of the payments of $2,500 until after they were made. The trustee filed a written statement with this court on March 11, 1942, wherein he says that a few days prior to the $2,500 payments "he had a conversation" with David Getz, Esq., who was Baker's counsel of record, and that he told Mr. Getz that he was going to make these payments, and that Mr. Getz told him that he (Getz) had no objection, provided that they did not exceed an alleged tentative compromise. Mention is made of this because the referee indicated that there was a waiver by, or estoppel of, Baker by "acquiescence" to the payments. The vice of the whole situation is that the court is called upon to make a decision on disputed facts that are not a matter of record. The referee should not have permitted any payments on account without any previous written orders by him, so as to have enabled the affected parties to take the proper steps to review or otherwise

protect their interests. As it was, the referee did not file his formal orders until December 3, 1941, and therefore these are the only orders that are properly for review by this court.

Upon considering the record I am of the opinion that the sale of the real estate was made subject to the stipulation that a sum not exceeding $4,000 would be borne by the lien creditors for expenses of administration, which I have already stated includes compensation to referees, trustees and the various attorneys.

 The case at bar is similar to In re Vulcan Foundry & Machine Co., 3 Cir., 180 F. 671, 674, this circuit. In that case the real estate of a bankrupt which was encumbered by two mortgages was sold subject to the first mortgage, the order providing that if the second mortgagee should purchase the property he should be allowed credit on the purchase price to the extent of the mortgage but should pay $500 in cash to be "held by the trustee subject to the payment of any expenses or commissions that it may hereafter be determined are a proper charge against the mortgage". Before the order was made the second mortgagee protested against it, and stated that he would not be bound by it. After the sale, the mortgagee who had purchased the property deposited $500 in cash. The trustee demanded the whole expense of preserving and administering the property amounting to $4,454.11 additional. The district court ordered that sum paid. The Circuit Court of Appeals reversed, saying (page 673 of 180 F.):

"Bankruptcy proceedings take place in a court of equity, and it should always be remembered that holders of valid liens have a statutory right to preferred treatment. If the receiver or trustee has a reasonable belief that the property is worth substantially more than the liens, it may no doubt be his duty to preserve this equity for the general creditors. But—speaking generally—since such steps as may be taken for this purpose are in the interest of these creditors, the costs should be paid by them and not by the lienholders, whose debts, indeed, are often perfectly secure, and receive no benefit from such effort as may be made to turn the equity into cash. * * * We think it is safe to say that the holders of liens are ordinarily entitled to judge for themselves what their interests may require, and that these interests cannot be affected without their consent in the effort to benefit persons whose rights are inferior to their own. * * *

"The property was bought under distinct and positive terms, which contained no reference to the possibility of such charges as were afterwards made, and we think the District Court should not in effect have substituted other terms for those which had thus been offered and accepted. Here was the order of a competent tribunal—the referee—unmodified and unappealed from, under which the second mortgagees acted in good faith, thereby waiving whatever right they may have had to object to it in toto."

 Even in the absence of an agreement there is no justification of visiting administration charges of over $22,000 against the lienor Baker. It has been repeatedly held that the sale of encumbered property is for the benefit of the estate and the general creditors interested therein. The lien creditor is not usually benefited by the sale. The proceeds of the sale stand in place of the property liened or mortgaged, and the lienor or mortgagee is entitled to distribution in full without deduction of expenses of the sale or of administration of the bankrupt estate. But when the sale is held at the instance of the lien creditors who invoke the aid of the bankruptcy court to secure the sale, they may be charged with the expenses only to the extent that the property is directly benefited or conserved thereby. The expenses include what it would ordinarily cost the lienor to foreclose and sell the property had there been no resort to the bankruptcy court and the reasonable expenses incurred in preserving the property. See In re Prindible, 3 Cir., 115 F.2d 21; Bank of Wadesboro v. Little, 4 Cir., 71 F.2d 513; Lerner Stores Corp. v. Electric Maid Bake Shops, 5 Cir., 24 F.2d 780; Gugel v. New Orleans National Bank, 5 Cir., 239 F. 676; In re Elmore Cotton Mills, D.C., 217 F. 808; In re Howard, D.C., 207 F. 402; In re Stewart, D.C., 193 F. 791; In re Williams' Estate, 9 Cir., 156 F. 934; In re Prince & Walter, D.C., 131 F. 546; In re Utt et al., 7 Cir., 105 F. 754; In re Barber, D.C., 97 F. 547; In re Zehner, D.C., 193 F. 787; In re Harralson, 8 Cir., 179 F. 490, 29 L.R.A.,N.S., 737; Norton Jewelry Co. v. Hinds, 8 Cir., 245 F. 341; In re Myers, 2 Cir., 24 F.2d 349; In re Robinson v. Dickey, 3 Cir., 36 F.2d 147; Liddon & Bro. v. Smith, 5 Cir., 135 F. 43; Virginia Securities Corp. v. Patrick

Orchards, 4 Cir., 20 F.2d 78; In re King, D.C., 46 F.2d 115.

It was but recently so decided in our own Circuit Court of Appeals in the case of In re Prindible, supra, where Judge Jones said (page 24 of 115 F.2d):

" * * * Where a sale of encumbered property is made free and clear of liens, the costs of preserving the property are deductible from the proceeds of sale before the benefits of the security accrue to the lienor. Adair v. Bank of America Nat. T. & S. Ass'n, supra [303 U.S. 350, 58 S.Ct. 594, 82 L.Ed. 889], note 8, and cases there cited. *General administration expenses, however, are not to be charged against pledged property (Stewart v. Platt, 101 U.S. 731, 25 L.Ed. 816) except to the extent that the property is directly benefited or conserved thereby.* Robinson v. Dickey, 3 Cir., 36 F.2d 147, at page 149 and cases cited. Bankruptcy does not operate to take away the rights of a secured creditor of the bankrupt except where the security was obtained in a manner or within the time proscribed by the Bankruptcy Act. A validly secured creditor of a bankrupt need bear only the costs of enforcing his rights and the necessary expenses incurred in the preservation of the pledged property. Robinson v. Dickey, supra; In re Williams' Estate, 9 Cir., 156 F. 934, 939. See, generally, Remington on Bankruptcy, 4th Ed., § 2606 et Seq. [Emphasis supplied.] * * *

"Before trustees in bankruptcies are entitled to compensation upon moneys disbursed or turned over by them to lienholders (52 Stat. 861, 11 U.S.C.A. § 76 sub. c), it is necessary that the trustees show some act of administration with respect to encumbered property, such as preserving an equity of the bankrupt in the property. Gugel v. New Orleans National Bank, 5 Cir., 239 F. 676; C. B. Norton Jewelry Co. v. Hinds, 8 Cir., 245 F. 341. And, even then, compensation has been held to be due only upon the value of the equity of redemption. In re Old Oregon Manufacturing Co., D.C., 236 F. 804. It has been held likewise with respect to pledged personalty. In re Meadows, 2 Cir., 211 F. 948, certiorari denied Hotchkiss v. Lynn, 234 U.S. 763, 34 S.Ct. 997, 58 L.Ed. 1581; In re Ford's Wawbeek Springs, D.C., 7 F.2d 959. In a normal administration, it is 'on all moneys disbursed to creditors by the trustees' that a referee is entitled to the compensation fixed by the Bankruptcy Act. 30 Stat. 556 as amended, 52 Stat. 859, 11 U.S.C.A. § 68, sub. a.

"Regardless of any exceptions, the referee had a duty to see that the allowances for commissions, attorneys' fees, expenses, etc., were both reasonable and proper. This duty, the referee will now perform by obtaining refunds from those who participated in the division of the bankrupt's estate in excess of reasonable fees, commissions and expenses or surcharge the trustee for the improvident payments. When that is done, the fund representing the value of the encumbered property actually sold by the trustee and for which he received payment of the consideration should be segregated and so accounted for, subject to any proper and reasonable charges or expenses incurred in the preservation of such property by the trustee. The balance may then be distributed to lienholders in the order of their priority, the residue thereafter, if any, falling into the general estate."

It is true that there has been considerable work done in the administration of this estate, but outside of accomplishing the sale not a single thing was done for the benefit of the lienor Baker who is asked to bear the burden. In fact it was all done against his interests. The trustee unsuccessfully sought to attack Baker's liens. Counsel for the trustee and bankrupt have been instrumental in securing the United States Government in reopening a compromise made by Baker on certain tax liens. This latter act may be commendable but there is no reason why Baker should be charged with fees in this connection. There were other labors but none produced a single penny for general creditors.

It must be kept in mind that the office of trustee and counsel are voluntarily assumed and that if they undertake labors for which they cannot be adequately compensated they must bear the consequences. The referee has it in his power to insist upon the proper indemnity from the persons interested in or for whose benefit the various issues are tried before proceeding. He cannot, against the wishes of the lienor, charge or impair the lienor's fund beyond the expenses indicated above. As a matter of fact the referee did take this precaution—hence the stipulation of December 11, 1939.

It must be noted that at the audit of the account on December 16, 1940, certain credits were taken for disbursements. I do not have the account before me. Counsel for Henry Baker in his brief states that these credits, amounting to $4,647.43, are for costs expended including the expenses of the referee, stenographers' charges, appraisers' fees, costs of the sale, expenses of the trustee, and expenses of the attorney for the trustee. No objection was made at the audit of the account on December 16, 1940, and insofar as any of the above enumerated costs are included in the account *that was then considered* they will not be disturbed and are therefore approved. The only objections that were made at the audit were to the requests for allowances. ·Baker's review attacks only the allowances made in the orders of December 3, 1941.

The petition of Henry Baker for the review of the orders of the referee of December 3, 1941, is therefore sustained.

In view of the above finding, discussion of the petitions for review by Fred B. Gernerd, Esq., attorney for the trustee; Charles M. Bolich, Esq., attorney for the bankrupt; Robert E. Bittner, assignee for the benefit of creditors, and Fred B. Gernerd, Esq., attorney for the assignees, becomes academic, and accordingly their petitions are denied.

Since the fund available for administration expense was limited to $4,000, while the actual expenditures amounted to $4,647.43, which were allowed at the audit of the account on December 16, 1940, there was and is nothing available for allowances to the referee, trustee, attorney for the trustee, attorney for the debtor, and attorney for the assignees.

While the actual allowances of $4,647.43 at the audit of December 16, 1940 were, of course, in excess of the $4,000 limit, since no exceptions have been filed by reason of the excess payments there is nothing before the court in connection with such overpayments.

### Certificate of Review No. 9.

The petition for review is denied, and the order of the referee is affirmed and confirmed.

### Certificate of Review No. 10.

The petition for review is denied and the order of the referee is affirmed and confirmed.

### Certificate of Review No. 11.

The petition for review is denied, and the order of the referee is affirmed and confirmed.

### Certificate of Review No. 12.

This matter is on review of an order of the referee disallowing a claim on a judgment entered in the State Court.

On February 8, 1934, a judgment in the amount of $20,000 was entered in favor of the Liberty Trust Co. against the bankrupt, James K. Bowen, in the Court of Common Pleas of Lehigh County, Pennsylvania, as of January Term, 1934, No. 447. The judgment was entered by confession pursuant to a warrant of attorney so to do contained in a bond accompanying a mortgage dated January 25, 1929, on premises situate at 950 Hamilton Street, Allentown, Pennsylvania. By various assignments, the judgment was transferred to Henry Baker.

At the time of the adjudication of James K. Bowen as a bankrupt, the judgment was a lien on certain real estate of the bankrupt. Baker filed a proof of claim for $11,865.06 on this judgment, seeking payment thereof as a secured claim in the nature of a lien on real estate.

At the hearings on the claim, the bankrupt, Bowen, testified that in May, 1932, he conveyed the mortgaged premises to one Frank Sanders, an employee of the Liberty Trust Co., the mortgagee, under an oral understanding with Allen W. Hagenbach, the president of the trust company, whereby it was agreed that all of Bowen's obligations to the trust company were to be thereby cancelled. Hagenbach denied that he had made any such agreement. It appears that a deed was made and delivered and that the trust company leased the property to Bowen for a period of time. Subsequently, the trust company entered judgment on the bond and sold the mortgaged premises in foreclosure proceedings, buying the property itself at the sale.

It further appears, from Bowen's testimony, that in 1937 or 1938, Bowen negotiated with Hagenbach for the compromise of Bowen's obligations to the bank and offered $1,500 in settlement thereof. The obligations included the mortgage against 950 Hamilton Street.

From the testimony, the referee found that the oral agreement was made

as testified by Bowen and disallowed Baker's claim. In this the referee committed error for even if the oral agreement were made as found by the referee, it would not be binding on the Liberty Trust Co., because there is no proof that its president was authorized to enter into such an arrangement, or that the agreement was ratified by the bank.

 Under the law in Pennsylvania, which must govern this issue, the president of a bank does not have the right to accept anything but money in payment of an obligation due the bank, without being authorized by the board of directors either expressly or by long-continued acquiescence. Aliquippa National Bank v. Harvey, 340 Pa. 223, 16 A.2d 409. There is no evidence whatsoever as to what authority Hagenbach had to make an oral agreement with Bowen to cancel Bowen's mortgage debt upon delivery of a deed to the mortgaged premises. Nor is there any evidence as to the practices of the bank from which could be found a long-continued acquiescence by the board of directors in such transactions by the president. Likewise, there is no evidence of any ratification of such an oral agreement by the board of directors of the bank.

For these reasons, the claim on the judgment should have been allowed. Accordingly, the order of the referee disallowing the claim is reversed, and said order is hereby vacated and the claim on the judgment is allowed.

### Certificate of Review No. 13.

Henry Baker filed proof of a claim for $79,240.42 with interest from September 30, 1935. The claim was on a judgment entered in the Court of Common Pleas of Lehigh County, Pennsylvania, as of September Term, 1935, No. 152.

The referee in an order entered December 3, 1941, allowed the claim as a secured claim and directed payment thereof in the order of its priority as a lien on funds in the hands of the trustee.

The claimant petitioned to review the order, assigning as error the failure of the referee to allow interest on the claim.

The referee, in his opinion, attached to the certificate of review (No. 13), stated that interest was not allowed because the fund available for distribution was not sufficient to permit payment of the full principal of the claim so that it was unnecessary to calculate and add the interest.

In the schedule of distribution, $30,121.20 was awarded to Henry Baker on account of this judgment claim.

That award exhausted the fund if the orders of awards of prior claims are undisturbed. However, reviews of several of the orders for distribution prior to Baker's judgment are now pending before this court. If on final determination of those reviews the awards are set aside or modified, there may be available for distribution on this judgment of Henry Baker sums in excess of the principal amount of the judgment. For that reason, Henry Baker presses his right to have the claim allowed with interest.

The referee allowed claims of general creditors in this estate. Such claims could not participate in distribution until Baker's said judgment with interest is paid in full.

In allowing the claims of other lien creditors, the referee calculated interest to September 10, 1940, the date of the confirmation of the sale of the real estate against which the claims were liens.

The following calculation of interest on the Baker judgment claim is submitted:

Amount of claim..............$ 79,240.42
Interest from Sept. 30, 1935 to
 Sept. 10, 1940............... 23,507.98

 Total $102,748.40

 The order of the referee is therefore modified, and the claim allowed in the amount of $102,748.40.

In view of the above, I make the following orders:

(1) The petition for review of Henry Baker is granted and sustained, subject to the provisions herein.

(2) The orders of the referee dated December 3, 1941, making an allowance of $7,500 to Fred B. Gernerd, Esq., counsel for the trustee; $5,124.39 to Robert E. Haas, Esq., trustee; $4,053.06 to Robert L. Stuart, Referee; $250 to Charles M. Bolich, Esq., counsel for the bankrupt; $100 each to Robert E. Bittner and Robert E. Haas, assignees for the benefit of creditors; $9.75 to Fred B. Gernerd, Esq., for costs incident to assignment for benefit of creditors, and $100 to Samuel L. Butz for

premium on assignees' bond, are hereby vacated.

(3) The petitions for reviews of Fred B. Gernerd, Esq., attorney for the trustee; Charles M. Bolich, Esq., attorney for the bankrupt; Robert E. Bittner, assignee for the benefit of creditors, and Fred B. Gernerd, Esq., attorney for assignee, are dismissed.

(4) The petitions for certificates of review Nos. 9, 10 and 11 are denied.

(5) The petition for certificate of review No. 12 is granted and sustained, and the order of the referee disallowing the claim is reversed and vacated and the claim on the judgment is allowed.

(6) The petition for certificate of review No. 13 is granted and sustained, and the order of the referee is modified and the claim allowed in the amount of $102,-748.40.

(7) In view of the very evident bitterness which has characterized these proceedings before the referee, Robert L. Stuart, Esq., is relieved of further consideration of the proceedings In the Matter of James K. Bowen, Bankrupt, and the matter is hereby assigned to Referee John M. Hill, henceforth.

(8) The said Referee John M. Hill is directed to act on appropriate proceedings to enforce the orders herein made so as to recover the unauthorized and improper payments to Referee Robert L. Stuart; Robert E. Haas, Esq., trustee; Fred B. Gernerd, Esq., counsel for the trustee; Charles M. Bolich, Esq., counsel for the bankrupt, and Robert E. Bittner and Samuel L. Butz.

NOTE The private conference referred to in this Opinion strikes an extremely unfortunate note in these proceedings. Herbert Leman, Esq., counsel for Baker, at the hearing before this court on December 17, 1941, stated that on the night of December 27, 1940 he, together with an associate, David Getz, Esq., met at the trustee's office at about 8 P. M.; that the referee was also present at this meeting; further, that at this night conference, which was held without notice to any other parties in the case or their counsel, that "The referee and trustee both said that they were ready to make complete and full distribution of approximately $100,000. to my client, Mr. Baker, if he would consent to the $14,000. allowance that they were asking. They told me

$6,000. of this would go to Mr. Gernerd, attorney for the trustee, and the balance would be divided equally between himself and the trustee". Further, Mr. Leman stated to the court (pp. 5–6, N. T.):

" * * * I asked him (the referee) how he could make a distribution when the United States Government had at a meeting on August 29, 1940, the date of sale of the property in question, requested the referee to impound sufficient funds for the purpose of permitting the Government to then decide as to whether or not in the future it would come along and intervene in any possible way in these proceedings. He replied that he was not concerned with the United States Government; that at no time had it come in affirmatively; that he awaited the United States District Court decision—I believe it was of Your Honor's on December 9, 1940, as to what would—what disposition Your Honor would make of the civil action brought by the bankrupt against the trustee and Henry Baker to have the Government releases as liens on this property set aside, and that knowing that the United States District Court had given opportunity to the United States Government to come in and it having failed so to do, and in fact informed this Court that it had no intention of so doing, the referee felt free to go ahead * * *."

The referee in a "Supplemental Statement" filed with this court on March 11, 1942, admitted the holding of the conference on the night of December 27, 1940, at the trustee's office, and stated that the meeting was held at the instance of Mr. Getz, and that "The referee joined in this conference with the thought that if this review could be avoided by an arrangement satisfactory to all it should be done and thus avoid unnecessary delay in the administration of the estate" (p. 2, Referee's Statement). That this meeting on the night of December 27, 1940, was an "off the record" affair was unquestioned by the referee and those who attended it. There was no stenographer present.

The referee vigorously denied the statements attributed to him by Mr. Leman that he would decide a very important question relating to the Government's claim of approximately $55,000 for taxes against the Government if the question of fees to the referee, the trustee, and counsel for the trustee were amicably settled in accordance with the referee's suggestion. While I refrain at this time from passing upon

the veracity of the parties, criticism must be expressed of the conduct of the referee in participating in an "off the record" conference held at night in the trustee's office, without notice to all the parties to the proceeding, and without the presence of a stenographer.

### Supplemental Opinion.

Since the filing of this opinion, hearing has been had before all five judges of the District Court for the Eastern District of Pennsylvania upon the charges made by Herbert S. Leman, Esquire, as referred to in the note, and we are unanimously of the opinion that the charges have not been substantiated.